210 S.W.3d 183 (2006)
K.R.L., Appellant,
v.
P.A.C.; Cabinet for Human Resources; and K.A.L., a Minor, Appellees.
No. 2006-CA-000364-ME.
Court of Appeals of Kentucky.
December 1, 2006.
*184 Gerald L. Greene, Greene & Lewis, Pineville, KY, for Appellant.
Shea Dunn Yoakum, Bowling & Yoakum, P.S.C., Middlesboro, KY, for Appellees.
Before BARBER, Judge; HUDDLESTON and PAISLEY, Senior Judges.[1]

OPINION
PAISLEY, Senior Judge.
K.R.L. appeals from an order entered by the Bell Circuit Court in which the trial court denied K.R.L.'s petition for involuntary termination of parental rights. In the petition, K.R.L. sought to terminate the parental rights of P.A.C., the biological father of K.R.L.'s young son. Now, on appeal, K.R.L. argues that she has standing to appeal the denial of her petition; argues that the trial court's findings of fact from the bench were inconsistent with its written findings of fact; and argues that the trial court's denial of her petition was clearly erroneous. Finding no error, we affirm.
K.R.L. (hereinafter referred to as "Mother") and P.A.C. (hereinafter referred to as "Father") dated for approximately three and a half years and lived together until September of 2004. Although the parties were never married, their relationship resulted in the birth of K.A.L. (hereinafter referred to as "Son") on December 6, 2002.
According to the record, Mother and Father had a very tumultuous relationship, and Mother had filed several petitions for domestic violence orders in order to protect herself from Father. Despite this, the record in this case details only one incident of domestic violence between the couple, *185 which occurred in January of 2004. Regarding this incident, Mother claimed that Father had severely beaten her and had held her and Son hostage for three days. Father admitted that he and Mother had engaged in an altercation but denied the severity of the assault and denied holding Mother and Son hostage. However, it is clear that Father did physically assault Mother and left numerous bruises on her upper torso and arms. Father claimed that this altercation occurred while Son was asleep so he insisted that the child was not exposed to his violent behavior. On the other hand, Mother claimed that Son, who would have been approximately thirteen months old at the time, witnessed the assault, and that it harmed his emotional well-being. Mother pursued criminal charges against Father, who ultimately pled guilty to assault in the fourth degree.
On June 28, 2004, Father signed an agreed judgment of paternity acknowledging that he was Son's biological father. The Bell District Court entered the judgment and ordered Father to begin paying child support in the amount of $160.00 per month. Father acknowledged later that he made no child support payments pursuant to the district court's order. According to the record, one of Father's income tax refunds had been seized and had been forwarded to Mother; however, Mother had declined to keep the money.
On October 12, 2005, Mother filed her petition for involuntary termination of parental rights with the Bell Circuit Court. In the petition, Mother alleged that Father abandoned Son for nearly two years and failed to provide essential care for Son.
On January 11, 2006, the trial court conducted a bench trial to resolve Mother's petition. Father and Mother both testified regarding the previously mentioned facts. Father also testified regarding his scant employment history and his history of illegal drug use. He also claimed that, prior to September of 2004, he and Son had a close relationship and that Son had been integrated into Father's family. He claimed that he had tried to maintain contact with Son but could not because, in September of 2004, Mother had obtained an emergency protective order against him which contained a no-contact provision. Father further claimed that he attempted to pay child support but was unable to do so because he had not been allowed to have contact with Mother. Despite claiming that he wished to pay child support, Father admitted that he made no attempt to pay his child support through the state.
At the hearing, Mother testified about her own recreational drug use and testified in depth regarding the previously mentioned assault. She also claimed that, while she and Father cohabited, Father provided only modest financial support for Son, and that after September of 2004, Father simply abandoned Son and made no attempt whatsoever to maintain contact.
After hearing the evidence, the trial court denied Mother's petition. Believing that the trial court erred, Mother now appeals to this Court.
Before we can consider the merits of Mother's appeal, we must address Kentucky Revised Statutes (KRS) 625.110, which reads in its entirety:
Any order for the involuntary termination of parental rights shall be conclusive and binding on all parties, except that an appeal may be taken from a judgment or order of the Circuit Court involuntarily terminating parental rights in accordance with the Kentucky Rules of Civil Procedure.
Under this statute, there can be an appeal in a termination of parental rights case only if the trial court grants the petition to terminate. Nevertheless, Mother claims *186 she has a constitutional right to appeal the ruling of the trial court denying her petition under Section 115 of the Kentucky Constitution. Although appeals from denials of petitions for termination of parental rights have previously reached the appellate courts of the Commonwealth, the issue of the statute's constitutionality has not been decided. See Cabinet for Human Resources v. J.B.B., 772 S.W.2d 646 (Ky. App.1989); Commonwealth, Cabinet for Families and Children v. G.C.W., 139 S.W.3d 172 (Ky.App.2004) and C.M.C. v. A.L.W., 180 S.W.3d 485 (Ky.App.2005). We are now squarely confronted with the question of whether the legislature may constitutionally prohibit an appeal when the trial court denies a petition to terminate parental rights. We note that Mother has properly notified the Attorney General of her challenge to the statute as required by KRS 418.075. Mother insists that a circuit court's decision declining to terminate parental rights involves substantial rights equal to those which are affected in a decision terminating parental rights. Even though Mother fails to identify the specific rights affected by a denial of termination, she nevertheless maintains that such a denial presents appealable issues. In addition, Mother cites the following cases: Cabinet for Human Resources v. J.B.B., supra; Commonwealth, Cabinet for Families and Children v. G.C.W., supra; C.M.C. v. A.L.W., supra and Day v. Day, 937 S.W.2d 717 (Ky.1997). Mother points out that in each of these cases, the appellate court addressed the merits of a denial to terminate parental rights. Ergo, she concludes that we should address the merits of her appeal as well.
When we consider a constitutional challenge to a statute, we must recognize that there is a strong presumption in favor of constitutionality. Fischer v. State Board of Elections, 879 S.W.2d 475 (Ky. 1994). Having said that, we must also acknowledge that we must follow our constitution, which is the fundamental law of this Commonwealth. Id. If we were to shirk this duty, we would breach the social compact that binds us together and would abandon our judicial responsibility. Id. at 475-476. As the Supreme Court of Kentucky so eloquently stated:
The judiciary has the ultimate power, and the duty, to apply, interpret, define, construe all words, phrases, sentences and sections of the Kentucky Constitution as necessitated by the controversies before it. It is solely the function of the judiciary to do so. This duty must be exercised even when such action serves as a check on the activities of another branch of government or when the court's view of the constitution is contrary to that of other branches, or even that of the public.
Id. at 476.
Mother contends that KRS 625.110 runs contrary to the constitutional mandate set forth in Section 115 of the Kentucky Constitution. This section states in its entirety:
In all cases, civil and criminal, there shall be allowed as a matter of right at least one appeal to another court, except that the Commonwealth may not appeal from a judgment of acquittal in a criminal case, other than for the purpose of securing a certification of law, and the General Assembly may prescribe that there shall be no appeal from that portion of a judgment dissolving a marriage. Procedural rules shall provide for expeditious and inexpensive appeals. Appeals shall be upon the record and not by trial de novo.
Ky. Const § 115. This section unequivocally mandates that all parties in all civil and criminal cases have a constitutional right to one appeal. In addition, Section *187 115 provides for only two exceptions: 1) the Commonwealth may not appeal from a judgment of acquittal and 2) the General Assembly has the power to prohibit a party from appealing the dissolution portion of a decree dissolving a marriage. These exceptions are very specific, and neither applies to the denial of a petition to terminate parental rights. Therefore, we must conclude that KRS 625.110, as currently written, is unconstitutional to the extent that it prohibits the right of appeal from the denial of a petition to terminate parental rights.
Since we conclude that Mother indeed has standing to appeal, we will now address the merits of her case. Mother argues that the trial court's findings of fact made from the bench contradicted the trial court's written findings of fact. She also insists that the trial court's written findings made no sense under the statutory scheme.
In her brief, Mother argues that, from the bench, the trial court clearly found that Father had abandoned Son. She also insists that Father failed to have contact with Son for over fifteen months and failed to pay child support for over nineteen months. Relying on KRS 600.020(1), Mother argues that a parent is deemed to have abused or neglected a child when that parent has failed to provide essential care or has failed to provide food and clothing or has abandoned the child. According to Mother, the trial court failed to apply the statutory standards in resolving her petition, and she insists that since Father failed to have contact with Son and failed to pay child support, Son was an abused or neglected child as defined by KRS 600.020(1).
Furthermore, Mother points out that once a circuit court has found that a child has been abused or neglected, it will terminate a parent's rights if it also finds that one of the following has occurred: 1) the parent has abandoned the child for more than ninety days; 2) the parent has failed to provide parental care or protection for more than six months or 3) the parent has failed to provide essential food and clothing for the child. She argues that Father's behavior has met all three criteria set forth, and insists that the trial court erred when it refused to terminate Father's parental rights.
When we review a termination of parental rights decision, we are limited to the clearly erroneous standard set forth in Kentucky Rules of Civil Procedure (CR) 52.01. R.C.R. v. Commonwealth, Cabinet for Human Resources, 988 S.W.2d 36, 38 (Ky.App.1998). Since Mother was the petitioner at the trial court level, she had the burden of proof and was required to prove by clear and convincing evidence that Father's parental rights should be terminated. KRS 625.090(1). With this in mind, we are required to give considerable deference to the trial court's findings, and we will not disturb those findings unless no substantial evidence exists in the record to support them. Commonwealth, Cabinet for Families and Children v. G.C.W., supra at 172. In addition, the trial court, as the finder of fact, has the responsibility to judge the credibility of all testimony, and may choose to believe or disbelieve any part of the evidence presented to it. Caudill v. Maloney's Discount Stores, 560 S.W.2d 15, 16 (Ky.1977).
To terminate parental rights, KRS 625.090 requires a finding, by clear and convincing evidence, 1) that the child is abused or neglected as defined in KRS 600.020(1), 2) that termination would be in the best interest of the child and 3) that one or more of the factors found in KRS 625.090(2)(a-j) exists. In this case, the trial court found that Son was not an abused or neglected child. The evidence *188 clearly does not compel a finding to the contrary. Moreover, we note that Mother presented no evidence to support a finding that termination of Father's parental rights would be in Son's best interest. Because the evidence does not compel a finding that Father's parental rights should have been terminated, the trial court's decision was not clearly erroneous.
The order denying Mother's petition for termination of parental rights is affirmed.
ALL CONCUR.
NOTES
[1] Senior Judge Lewis G. Paisley and Senior Judge Joseph R. Huddleston sitting as Special Judges by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.