J.M.R., Appellant,

v.

COMMONWEALTH of Kentucky, CABINET FOR HEALTH AND FAMILY SERVICES; T.S.W., an Infant; and N.P.W., an Infant, Appellees.

No. 2006–CA–002608–ME.

Court of Appeals of Kentucky.

Oct. 26, 2007.

Michael L. Goodwin, Louisville, KY, for appellant.

Erika L. Saylor, Louisville, KY, for appellee.

Before NICKELL, STUMBO, and THOMPSON, Judges.

### OPINION

THOMPSON, Judge.

J.M.R. (the "mother") appeals from the Jefferson Family Court's November 29, 2006, judgments terminating her parental rights to her two infant children, T.S.W. (TW) and N.P.W. (NW). Concluding that the family court did not err, we affirm.

After receiving notification from school officials that TW and NW had sustained physical injuries, the Cabinet for Health and Family Services (Cabinet) filed an Emergency Custody Order (ECO), on May 2, 2005, to obtain custody of the two boys. The ECO was based upon the injuries that the boys had received at the hands of their stepfather and mother, during the weekend of April 29, 2005. Photographs of the boys were taken that depicted various injuries. TW sustained severe cuts and bruising on his back, arms, legs, neck, and on an ear. NW sustained bruising on his arm.

On May 4, 2005, the mother waived her right to a hearing and consented to the placement of her children in the temporary custody of the Cabinet. The mother further agreed to cooperate with the Cabinet's treatment plan and agreed to supervised visitation with her children. The family court ordered that the stepfather have no contact with the children until further order of the court.

Over a year later, on May 11, 2006, a hearing was held regarding the allegation that the mother and stepfather had physically abused the two children. During this hearing, the family court conducted an *in camera* interview with each boy at which time the mother's counsel was permitted to question the boys. TW's testimony revealed that he had been beaten by his stepfather on Friday, April 29, 2005, because he had lied about not receiving his report card. Following this incident, TW decided to runaway from home to avoid further physical confrontation with his stepfather.

The following day, the stepfather found TW and returned him home. Upon returning home, TW was slapped in the face by his mother and then ordered to strip down to his underwear and go to his room. Soon thereafter, the stepfather entered TW's room and beat him with a belt. Fol-

lowing this initial encounter, the mother entered TW's room and struck him with the belt as well. The stepfather then returned and continued beating TW while his mother observed the beating. The beating ended when the mother took the belt from the stepfather.

Additionally, after confirming the testimony of TW, NW testified that he was beaten on Friday and Saturday of that weekend as well. The stepfather and mother chose not to testify due to their pending criminal charges related to the abuse. At the conclusion of the hearing, the family court found that TW and NW had been abused by their mother and stepfather. The family court ordered that the mother pay child support and that contact between her and the children be permitted only at the discretion of the children's therapists.

After the family court's finding of abuse, the Cabinet filed a petition for involuntary termination of parental rights on May 31, 2006, naming the children's putative father and the mother, as respondents. A single *guardian ad litem* was appointed to represent both children's interests, and a bench trial was conducted on October 12, 2006.

At trial, the Court heard testimony from six witnesses.[1] Admitting her part in TW's beating, the mother testified that she slapped him in the face and struck him at least four times with a belt. She testified that she had pled guilty to two counts of second-degree wanton endangerment as a result of her participation in the child abuse. She also admitted that she had not paid her court ordered child support following the family court's child support order of May 11, 2006.

She further testified that despite her knowledge of the no contact order between the stepfather and the boys that she had given the telephone number to the boys' foster home to the stepfather who had called their home. She testified that she was aware of her husband's history of domestic violence in previous relationships. Further, despite admitting that the stepfather had physically and emotionally abused her, she testified that she was not a victim of domestic violence. Finally, she testified that she remained married to the stepfather, that she continued to reside in his house where the two children were abused, and that she intended to reunify the children with herself and the stepfather.

Dr. Katie Smith, a licensed psychologist, testified that NW had been diagnosed with an anxiety disorder related to being a victim of child abuse. She testified that NW's anxiety was complicated by his continuing fear that his stepfather would harm him and his frustration regarding his mother's failure to leave his stepfather. Christopher Schmidt, a psychologist, testified that TW told him that his stepfather had physically abused him on numerous occasions. Schmidt further testified that TW feared that his stepfather would harm him and expressed concerns that his mother could not protect him from his stepfather.

Drusilla Hamm, the mother's therapist, testified that the mother continued to deny that she is a victim of domestic violence despite the stepfather's history of hitting, pushing, yelling, and cursing at her. Hamm further testified that the mother was unwilling to separate from the stepfather despite the therapeutic effect it would

---

1. The children's father testified in opposition to the Cabinet's petition to terminate his parental rights. However, after a break in the hearing, he agreed to voluntarily terminate his parental rights to the children, and the intended adoptive mother, who had been serving as the children's foster parent, agreed to a prospective visitation arrangement in which the father and the children could maintain their relationships.

have on her and her children. Finally, Hamm opined that the mother was not responsible or capable of protecting and caring for her children. Social worker, Tricia Mack, who was the family's caseworker, testified that the stepfather was remorseful and wanted to be reunited with his family. However, she testified that the no contact order had prevented him from participating in family counseling which was vital if the family, including the stepfather, were ever to be reunited.

On November 29, 2006, the family court entered findings of fact and conclusions of law and two judgments terminating the mother's parental rights to her two children. In its findings, the family court stated, in pertinent part, the following: (1) that the children, TW and NW, were abused or neglected children as defined by KRS 600.020(1); (2) that the mother, for reasons other than poverty alone, had continuously failed to provide essential food, clothing, shelter, medical care, or education for her children's well-being and that there was no reasonable expectation of significant improvement in her conduct in the immediately foreseeable future; (3) that the mother had continuously or repeatedly inflicted or allowed to be inflicted upon her children by other than accidental means, physical injury or emotional harm; (4) that the termination of the mother's parental rights were in the best interests of the children; and (5) that each individual ground for termination found in this action is sufficient for the termination of parental rights pursuant to KRS 625.090. This appeal followed.

On appeal, the mother raises three assignments of error: (1) that the family court erred when the children's therapists were permitted to testify as to statements made to them by the children; (2) that the family court violated her constitutional rights when it refused to permit the children to testify; and (3) that the family court abused its discretion when it found that the mother had continuously or repeatedly failed to provide essential food, clothing, shelter, medical care or education for her children's well-being.

■ The mother first alleges that the family court erred when it permitted the children's therapists to testify to statements that the boys had made to them. She alleges that their testimony, regarding the statements made by the boys, was inadmissible hearsay because the statements did not come within any of the enumerated hearsay exceptions. Because the family court included this evidence in its findings terminating her parental rights, the mother alleges that the family court's admission of this hearsay testimony was not only erroneous but also prejudicial. We disagree.

■ Under existing case law, KRE 803(4) permits an exception to the general prohibition against the admission of hearsay testimony. *Cabinet for Health and Family Services v. A.G.G.*, 190 S.W.3d 338, 343 (Ky.2006). As permitted by KRE 803(4), a trial court may admit statements into evidence, which would otherwise constitute inadmissible hearsay, if the statements were made for purposes of medical treatment or diagnosis. *Id.* More specifically, this exception applies when a witness, whose purpose for seeing an individual is to determine what happened to him and what therapy or treatment is needed, testifies to statements made by the individual for the purpose of receiving treatment. *Id.*

Dr. Smith and Mr. Schmidt, the attending therapists, testified to statements that the boys made to them concerning their feelings about being abused and their desires for the future. The therapists testified that the boys feared their stepfather would harm them in the future and that

the boys did not want to reunify with their mother because of her inability or unwillingness to leave their stepfather. While the mother contends that these statements were inadmissible hearsay, we conclude that these statements qualified as hearsay exceptions pursuant to KRE 803(4) because the statements were made to therapists who were determining what happened to the children and what treatment they needed to receive and the statements were made for the purpose of receiving medical treatment. *A.G.G.,* 190 S.W.3d at 343.

■ The mother next alleges that the family court violated her constitutional rights when it refused to permit her children to testify. She alleges that the due process clauses of the United States and Kentucky constitutions require courts to provide fundamentally fair procedures to parents in a termination of parental rights hearing. Although recognizing that KRS 625.080(2) empowers the family court with the discretion to prohibit infant testimony, the mother urges this Court to find this statute unconstitutional as applied in her case.

KRS 625.080(2) clearly provides that "[a] child may be permitted to be present during the proceedings and to testify if the court finds such to be in the best interests of the child." In accordance with this statute, the family court was informed by the children's therapists that the best interests of the children was not to testify. Moreover, the family court voiced its concern about the likely possibility that the children would have to testify in their stepfather's criminal trial related to their beatings. Based on the therapists' opinions, the desire to minimize the children's exposure to further legal proceedings, and having already interviewed the children *in camera* with the mother's counsel present and participating, the family court ruled that it was not in the children's best interests to testify.

We conclude that the family court did not err when it denied the mother's request to have the children testify. The record reflects that the family court judiciously evaluated the ramifications of the children's testimony and decided it was not in their best interests to testify. Moreover, the mother previously had the opportunity to question the children during the family court's May 11, 2006, *in camera* interview with the boys. Because the mother's counsel and the family court had already questioned the children, we conclude that the family court did not abuse its discretion by prohibiting the children's testimony nor did the court violate the mother's constitutional rights.

■ The mother's final allegation is that the family court abused its discretion when it found that the mother had continuously or repeatedly failed to provide or was incapable of providing essential food, clothing, shelter, medical care or education for the well-being of the children. The mother alleges that there was absolutely no evidence that she had ever failed to provide the necessary food, clothing, shelter, medical care or education for her children. We disagree.

■ When reviewing a family court's decision to terminate parental rights, we review the decision to determine if it was based upon clear and convincing evidence under the clearly erroneous standard set forth in Kentucky Rules of Civil Procedure (CR) 52.01. *K.R.L. v. P.A.C.,* 210 S.W.3d 183, 187 (Ky.App.2006). "With this in mind, we are required to give considerable deference to the trial court's findings, and we will not disturb those findings unless no

substantial evidence exists in the record to support them." *Id.*

■ "Clear and convincing proof does not necessarily mean uncontradicted proof. It is sufficient if there is proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent-minded people." *M.P.S. v. Cabinet for Human Resources,* 979 S.W.2d 114, 117 (Ky.App.1998)(citing *Rowland v. Holt,* 253 Ky. 718, 726, 70 S.W.2d 5, 9 (1934)).

KRS 625.090 provides that a court may involuntarily terminate all parental rights of a parent to the named child if it finds by clear and convincing evidence that: (1) the child has been abused or neglected; (2) termination would be in the child's best interest; and (3) one or more of several listed grounds for termination are present. One of the several listed grounds is that "the parent, for reasons other than poverty alone, has continuously or repeatedly failed to provide or is incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being and that there is no reasonable expectation of significant improvement in the parent's conduct in the immediately foreseeable future, considering the age of the child[.]" KRS 625.090(2)(g).

In this case, after finding that the children were abused and determining that it was in their best interests to terminate their mother's parental rights, the family court found, *inter alia,* that the mother, for reasons other than poverty alone, had continuously failed to provide essential food, clothing, shelter, medical care, or education for her children's well-being and that there is no reasonable expectation of significant improvement in her conduct in the immediately foreseeable future.

After applying the applicable standard of review, we conclude that the family court's finding was supported by substantial evidence. The mother testified that she had not paid any child support even though the support order had been issued five months earlier. She further testified that she and the stepfather still resided in his house and that he paid the household bills.

From these facts, the family court's finding was supported by substantial evidence under the clear and convincing evidence standard. The evidence of the mother's inability to provide for the financial needs of her children was sufficiently probative and substantial in nature that ordinarily prudent-minded people could be convinced that the mother had continuously failed to provide for her children's well-being and that there was no reasonable expectation of significant improvement in her conduct in the foreseeable future. *M.P.S.,* 979 S.W.2d at 117.

■ Furthermore, even if we assume that the "failed to provide" finding was not supported by substantial evidence, the family court's finding that the mother had continuously or repeatedly inflicted or allowed to be inflicted upon her children by other than accidental means, physical injury or emotional harm, was sufficient to support the termination of her parental rights as it is one of the several listed grounds which permit the termination of parental rights. KRS 625.090(2)(c).

Because the record clearly demonstrates that the mother abused her children or allowed them to be abused and the family court found that this ground alone would support termination, the mother's parental rights would have been terminated despite her ability to provide essential food, clothing, shelter, medical care, or education for

her children's well-being. So if there was error in the family court's finding that the mother failed to provide for her children's well-being, the error would be harmless.

For the foregoing reasons, the two judgments of the Jefferson Family Court ter-minating the mother's parental rights are affirmed.

ALL CONCUR.