RENDERED:  SEPTEMBER 26, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0079-ME

M.H.                                                                              APPELLANT


                          APPEAL FROM WHITLEY FAMILY COURT
v.                       HONORABLE DANIEL BALLOU, JUDGE
                          ACTION NO. 23-AD-00039


CABINET FOR HEALTH AND
FAMILY SERVICES,
COMMONWEALTH OF KENTUCKY;
A.J.E.H. (A CHILD); R.J.W.; AND Z.H.                                 APPELLEES


                                    OPINION
                                   AFFIRMING

                              ** ** ** ** **

BEFORE:  CETRULO, L. JONES, AND LAMBERT, JUDGES.

CETRULO, JUDGE:  This is an appeal from the judgment of the Whitley Family

Court terminating the parental rights of M.H. ("Mother") to her minor child

A.J.E.H. ("Child").  The parental rights of the legal and putative fathers named

below were also terminated, but they have not appealed.  For the reasons set forth

below, we affirm the family court's findings of fact, conclusions of law, and judgment of December 12, 2024.

## PROCEDURAL BACKGROUND

The Cabinet for Health and Family Services ("the Cabinet") has a long history with Mother and first became involved in 2011 when there was a domestic violence matter involving Mother and the legal father. In 2012, Mother was indicted for criminal abuse in the first-degree for the near fatality of another child, not her own. Following her guilty plea under *North Carolina v. Alford*,[1] she was sentenced in April 2014 to five years of incarceration. In June 2017, Mother was released on mandatory reentry supervision, only to have her supervision revoked after she absconded from a residential treatment center in December 2017. Upon revocation, she was ordered by the Kentucky Parole Board to serve out the remainder of her prison sentence.

Unfortunately, this case was not the end of Mother's involvement with the criminal justice system. In 2020, Mother faced both federal and state indictments over drug offenses.[2] Given concerns over Mother's substance abuse,

---

[1] 400 U.S. 25, 91 S. Ct. 160, 27 L. E. 2d 162 (1970) (allowing a defendant to accept a plea bargain without admitting guilt but acknowledging that the prosecution has enough evidence to prove guilt and that it is in his best interest to accept the offer and conviction).

[2] At the federal level, she was charged with intent to distribute methamphetamine. This matter was ultimately resolved in February 2024 with her guilty plea to 44 months in federal custody. At the state level, Mother was charged in September 2020 with trafficking in methamphetamine

the Cabinet became involved again in early 2020 and removed her three oldest children from her care. Over the ensuing months and years, Mother failed to complete any case plan services required for reunification with her children. On October 26, 2022, Mother's parental rights to these three children were terminated. By this time, Mother was pregnant with Child and had tested positive for methamphetamine during a prenatal visit.[3] Moreover, within the first month of the probated resolution of Mother's state trafficking case, she incurred new charges for theft and forgery in November 2022.[4]

While awaiting a probation revocation hearing, Mother entered transitional living at Horizon Health. She signed a safety plan with the Cabinet that she and soon-to-be-born Child would be under supervision of either Horizon staff or her maternal grandmother, who had been approved by the Cabinet. Child was born on December 21, 2022. However, within weeks of Child's birth, Mother left Horizon Health and violated the safety plan by leaving Child with his father, who was not approved by the Cabinet. She also failed to advise the Cabinet as to where she and Child were for at least a few days. The Cabinet only became aware

---

and other drug-related offenses. She eventually pled guilty to the trafficking offense in exchange for a probated sentence and was sentenced accordingly in October 2022.

[3] There was evidence presented at the final hearing that the meconium from the child's birth was clean.

[4] Mother testified at the final hearing that those charges were ultimately dropped.

of Child's whereabouts from a Facebook post. The Cabinet filed for emergency custody in January 2023.

At the temporary removal hearing, a new case plan was negotiated with Mother requiring her to undergo assessments for substance abuse, parenting, mental health, and to make daily phone calls for random drug screening while continuing her outpatient treatment. Mother failed to comply with most of those requirements until after she was reincarcerated on her probation violation in March 2023. That same month, the Cabinet amended the petition in the juvenile case to allege further that when Child was taken into state custody, the foster parents reported finding a needle containing suspected methamphetamine in Child's diaper bag.

An adjudication hearing in the juvenile case was held in April 2023 and resulted in a finding of neglect by Mother. In June 2023, at the disposition hearing, the juvenile court waived the Cabinet's obligation to make reasonable efforts to offer reunification services to Mother due to her failure to comply with the case plan.

This action commenced in August 2023 with the filing of the petition for involuntary termination of Mother's parental rights. Mother was personally served with the petition while incarcerated, and she filed a *pro se* answer. She was also appointed counsel. In her response to the original petition, she named a

potential father to the Child, requiring the Cabinet to file an amended petition joining a putative father. By the time service of the amended petition was attempted, Mother had been transferred to a different correctional facility, although she was still incarcerated in Kentucky. The amended petition came back undelivered as "inmate no longer here." The record, however, reflects that future communications were in fact delivered to Mother to which she responded *pro se*.

The record further confirms that two hearing dates in 2024 had to be continued due to the inability to transport Mother to court. Mother contacted the family court personally about the issues regarding her transportation and requested a new court appointed attorney, which was granted. By the final hearing date, Mother had been moved to a federal penitentiary in Florida and was unable to be transported back to Kentucky for court; however, she attended and participated in the hearing from a breakroom in the federal penitentiary via Zoom.

At the termination hearing, the two named fathers failed to appear, although they had been appointed counsel. The family court noted that Mother had been served with the original petition; had been appointed counsel; and was given time to privately confer with her attorney. Mother and her criminal defense attorney testified that Mother participated in the residential treatment program while in federal custody, that she would likely be eligible for early release, and she would then spend some time in a halfway house before being released to home

-5-

incarceration. Regarding the needle in Child's diaper bag, Mother denied having any involvement, and it was unclear from the evidence presented who had possession of the diaper bag when Child was removed. Mother denied that she attempted to "cheat" or tamper with two drug screens between January and March 2023. Finally, she testified that, while incarcerated, she completed all aspects of the case plan, except for parenting classes which were not offered at the federal facility.

The Cabinet called social workers, Tammy Helton ("Ms. Helton") and Christian Howard. The Guardian *ad litem* ("GAL") for Child also participated. Ms. Helton testified that prior to Mother's incarceration, she had only participated in a few services; that she had failed to call in daily for her random drug screens; and had tested only six times, attempting to alter two of the tests. The Cabinet introduced records in support of these allegations, along with Mother's prior criminal records and juvenile proceedings from the other children as well as Child.

Following the hearing, the family court entered its findings of fact and conclusions of law by clear and convincing evidence that Child was a neglected child as defined by Kentucky Revised Statute ("KRS") 600.020(1); that Mother had failed to provide care and protection, food, clothing, or shelter for Child for a period of at least six months; and that there was no reasonable expectation of improvement, considering the age of Child. The court further noted the prior

-6-

termination of parental rights to Mother's three older children and held that the conditions or factors underlying the previous terminations had not been corrected. The court found that Mother had abandoned Child for a period of not less than 90 days; that Child had been in foster care for 15 of the 48 months preceding the filing of the petition;[5] and that termination of parental rights was in the best interest of Child.

Mother raises four arguments on appeal. First, she asserts that her due process rights were violated when the hearing was not conducted in a private setting and she had to attend via Zoom. In her second argument, she argues that she was not properly served with process of the amended petition, and there was no GAL report filed by her first appointed attorney raising this lack of service issue. Third, she asserts the family court abused its discretion and failed to find that Child was neglected by a clear and convincing standard. Finally, she asserts that the family court erred in allowing inadmissible hearsay testimony from Ms. Helton and that the judgment was not supported by clear and convincing evidence of the statutory elements of KRS 625.090.

---

[5] The Cabinet concedes that the court's finding in this regard is erroneous as the petition was filed within nine months of the child's placement in foster care. However, the child had been in foster care for 22 months at the time of the hearing.

## STANDARD OF REVIEW

This Court reviews a family court's factual findings pursuant to the standard of clear error. Kentucky Rule of Civil Procedure ("CR") 52.01; *see also M.E.C. v. Commonwealth, Cabinet for Health & Fam. Servs.*, 254 S.W.3d 846, 850 (Ky. App. 2008). Appellate review of the decision to terminate parental rights under the clear error standard affords great deference to a family court's findings and permits a family court "wide discretion in terminating parental rights." *Cabinet for Health & Fam. Servs. v K.H.*, 423 S.W.3d 204, 211 (Ky. 2014) (citation omitted). "It is sufficient if there is proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent-minded people." *M.P.S. v. Cabinet for Human Resources*, 979 S.W.2d 114, 117 (Ky. App. 1998) (quoting *Rowland v. Holt*, 70 S.W.2d 5, 9 (Ky. 1934)).

## ANALYSIS

We begin our analysis by addressing Mother's first two arguments concerning a denial of due process in these termination proceedings.

As previously noted, Mother attended the hearing via Zoom while she was in an out-of-state federal prison. Specifically, she asserts that the hearing was not conducted in private as she was in a breakroom at the prison where the sound quality was poor. Second, she contends that she was unable to reach her court-

appointed counsel during the months leading up to the hearing, and that the amended petition was not served upon her but instead upon her counsel.

First, none of those issues were raised before the family court, although we note that she was well-represented at the hearing. This Court cannot consider arguments that were not presented to the lower court. *Oakley v. Oakley*, 391 S.W.3d 377, 380 (Ky. App. 2012).

Furthermore, we find no merit to these arguments, having reviewed the entire written record and the hearing itself. Mother was personally served with the initial petition where she was incarcerated. She provided a response to the petition herself and informed the court, by letter, that another person was the legal father. In response to that information, the Cabinet was then required to amend the petition to add the newly named putative father. That amended petition was served upon her through her then court-appointed attorney. By then, Mother had been moved to another facility. It is not clear whether she received the amended petition, but service upon her then attorney was sufficient under the civil rules.

Kentucky Rule of Civil Procedure ("CR") 5.02(1) provides that "service upon the attorney or upon a party shall be made by delivering a copy to the attorney or party or by mailing it to the attorney or party at the last known address of such person." The court-appointed attorney for Mother was served with the amended petition. Since 2013, CR 5.02(1) has also included the provision that

service is complete upon mailing as above, unless "**the serving party learns or has reason to know that it did not reach the person to be served**." *See also W.R.G. v. K.C.*, 673 S.W.3d 81, 85 (Ky. App. 2023). Here, there was no reason for the court or the Cabinet to believe that Mother had not been served. She continued to send letters directly to the court in this case, specifically addressing the court dates and her need to be transported for the hearings.

Moreover, Mother personally advised the court in writing that she wanted a new court-appointed attorney, and a new attorney was in fact appointed. It appears that satisfying these additional steps resulted in the delay of the hearing on at least a few occasions. By the time of the final hearing, she had been transported to Florida to serve her federal sentence. The court was unable to arrange for out-of-state transportation from a federal facility.

As for the hearing itself, the record reflects that the family court was diligent in checking with Mother to make sure she could hear and see the witnesses and counsel. Mother responded to all questions asked of her and never indicated any difficulty with the audio, video, or otherwise virtual attendance for the hearing. Furthermore, Mother has provided no argument as to how an in-person proceeding would have changed the hearing's outcome.

This Court has previously found that, when established by substantial evidence, issues with regard to hearing Mother's testimony during a virtual hearing

-10-

could violate due process rights. *K.D.H. v. Cabinet for Health & Fam. Servs.*, 630 S.W.3d 729, 740-41 (Ky. App. 2021). However, we have also found that where there is no evidence of difficulty hearing or an inability to participate in the proceedings and no showing of how a person's rights were violated by participating remotely, there is no due process violation. *See A.H. v. Cabinet for Health & Fam. Servs.*, No. 2021-CA-0734-ME, 2022 WL 128037, at *3 (Ky. App. Jan. 14, 2022) (unpublished).[6] The hallmark of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Cabinet for Health & Fam. Servs. v. A.G.G.*, 190 S.W.3d 338, 346 (Ky. 2006). We find that due process was served here.

Mother's next argument is that the family court's findings were not based upon a clear and convincing standard. In support of this argument, Mother contends that the family court incorporated the finding of neglect from the juvenile court action, which is based upon the lower preponderance of evidence standard. When reviewing a decision to terminate parental rights, the appellate court must determine if the family court's conclusion was based upon clear and convincing evidence and, in so doing, must apply the clearly erroneous standard of appellate review. CR 52.01; *J.M.R. v. Commonwealth*, *Cabinet for Health & Fam. Servs.*,

---

[6] Citing as persuasive only, not binding. Rule of Appellate Procedure ("RAP") 41.

239 S.W.3d 116, 120 (Ky. App. 2007), *overruled on other grounds by Colvard v. Commonwealth*, 309 S.W.3d 239, 244 (Ky. App. 2007).

Here, the family court's judgment expressly found "that the child was neglected as defined in KRS 600.020(1), by clear and convincing evidence as to all three parents." The family court further noted that Child had been found to be neglected by a court of competent jurisdiction. Finally, the judgment then recited evidence upon which it relied in forming its findings.

Our Supreme Court observed in *Cabinet v. K.H.*, *supra*, that there was no abuse of discretion when the family court discussed three of the statutory factors contained in KRS 600.020(1)(a), making particularized findings that were supported by substantial evidence. 423 S.W.3d at 211. Likewise, this family court's findings also discussed the presence of three statutory qualifying events, and the evidence it considered that rendered Child a neglected child. Because the statute indicates that only one of the three prongs listed in KRS 625.090(1)(a) need be met, and because the family court expressly found that Child was neglected based on clear and convincing evidence, we find no error. Further, substantial evidence exists in this case to support the family court's findings and judgment.

Mother's final argument is that the family court improperly relied upon hearsay testimony from Ms. Helton. While Mother's trial counsel did not object to any of the testimony at the hearing, counsel accomplished an effective

cross-examination of the Cabinet workers. The family court, from the bench, noted that it was a difficult case as Mother had only a matter of weeks between the moment Child was taken from her custody and when she was reincarcerated on her criminal case. The evidence from Mother at the hearing was that she was making good progress toward the goals established by the Cabinet since her incarceration. Still, the family court acted within its discretion to consider Mother's previous criminal and parenting history and the evidence that she did not follow the safety plan in those first few weeks so that she could have continued to act in a caretaking role.

There was evidence that she attempted to tamper with her drug screens on at least two occasions during the three months before her incarceration, and that she failed to complete required "call ins" or actively participate in substance abuse treatment before her incarceration. There was evidence that she had made no attempts to inquire about the welfare of the Child or to maintain any relationship with him. In fact, Child had no knowledge of Mother at all. Child was doing well in the foster home where he has been since January 2023. The foster parents want to adopt him and there was no reasonable expectation of Mother being able to provide essential food, clothing, shelter, or care in the foreseeable future, considering the age of the Child.

The family court considered all of the prior criminal records of Mother, which were placed into evidence without objection. The court considered the three other orders of termination of Mother's parental rights, which were also placed into evidence without objection. The court found some of Mother's testimony was not credible considering both written and verbal evidence of her attempts to alter drug screens. Finally, the court concluded that it was not in the best interest of Child to return to the parent within any reasonable period given his age, the amount of time he has spent in foster care, and the fact that Mother was still in federal custody.

As to the claims that some of the evidence was based upon hearsay from Ms. Helton, we again note no objections during the trial. Further, in a bench trial where a judge acts as the factfinder, "it is presumed that he will be able to disregard hearsay statements." *G.E.Y. v. Cabinet for Human Res.*, 701 S.W.2d 713, 715 (Ky. App. 1985). The admission of such testimony is deemed harmless error unless the court particularly relied upon the hearsay testimony in making its decision. Our review of the record demonstrates that the family court here was able to discern the reasons for some of the testimony being presented through Ms. Helton as she had largely been involved in Mother's three previous termination cases.

Mother asserts that through cross-examination, Ms. Helton's testimony was, on occasion, shown to be mistaken. However, that effective cross-examination of the social worker by Mother's counsel provided the family court with the context and ability to fully evaluate the overall evidence. Further, appellate review of such testimony is "limited to ascertaining whether the evidence relied upon by the trier of fact was of sufficient *quality* and *substantiality* to support the rationality of the judgment." *Id.* at 715 (citation omitted). Pursuant to this standard, an appellate court is obligated to give a great deal of deference to the family court's findings and should not interfere with those findings unless the record is devoid of substantial evidence to support them. *K.R.L. v. P.A.C.*, 210 S.W.3d 183, 187 (Ky. App. 2006). Here, there was sufficient evidence in the admitted criminal records and juvenile court records, testimony of Mother herself, and non-hearsay evidence recited in the trial to support the judgment.

For all the foregoing reasons, the Whitley Family Court judgment is AFFIRMED.

ALL CONCUR.

-15-

BRIEFS FOR APPELLANT:

Leroy A. Gilbert, Jr.
Corbin, Kentucky

BRIEF FOR APPELLEE,
COMMONWEALTH OF
KENTUCKY, CABINET FOR
HEALTH AND FAMILY
SERVICES:

Leslie M. Laupp
Covington, Kentucky