RENDERED: MARCH 27, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-1068-ME

S.E.K. APPELLANT

v.  APPEAL FROM JEFFERSON FAMILY COURT
HONORABLE LAURA P. RUSSELL, JUDGE
ACTION NO. 25-AD-500063

A.L.J., A MINOR CHILD, AND
COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; CETRULO AND KAREM, JUDGES.

CETRULO, JUDGE: This is an appeal from the findings of fact, conclusions of

law, and judgment of the Jefferson Family Court terminating the parental rights of

S.E.K. ("Mother"). Having conducted our own independent review of the record

below, we affirm the Jefferson Family Court.

## FACTS

The child was born on February 11, 2015. The child's father passed away in 2021, and Mother and child moved into the maternal grandmother's home. In January 2023, the family came to the attention of the Cabinet for Health and Family Services ("Cabinet") due to environmental concerns. Initially, the child remained at the home with Mother and grandmother, and in-home services were provided to the family. However, in May 2023, the Cabinet received information that maternal grandmother had moved, leaving Mother and child homeless. The Cabinet filed a dependency petition, and a temporary removal hearing was held on May 31, 2023. Mother agreed at that hearing for the child to be placed in the temporary custody of a maternal aunt. Mother moved into a homeless shelter.

Two months later, an amended petition was filed alleging educational and medical neglect of the child that became known after the child was placed with the maternal aunt. Specifically, it was discovered that the child had not been seen by a dentist for several years; had not received recommended orthopedic services; had not been provided her asthma or ADHD medication; and had excessive tardiness during first and second grades. There were also concerns with Mother's mental health and possible substance abuse.

On August 16, 2023, the family court granted the motion to amend the petition and ordered Mother to complete a psychological evaluation. The court

placed the child in the Cabinet's temporary custody as the maternal aunt was no longer willing to care for the child. On February 28, 2024, at the adjudication hearing, Mother stipulated to a finding of educational neglect. Mother was again ordered to engage in counseling, which had not occurred to date; she had left the homeless shelter to live with a boyfriend; and was allegedly failing to maintain contact with the Cabinet.

The disposition hearing was continued until Mother completed the court ordered assessment and was subsequently heard on July 17, 2024. At that point, Mother was ordered to complete the recommendations of the assessment that included, in part: participation in parenting classes; participation in a substance abuse evaluation due to a prior positive screen for cocaine; and participation in counseling. She was granted unsupervised visitation with the child, so long as she remained compliant, cooperative with the Cabinet, and refrained from discussing the case with the child. Mother was also required to obtain stable housing and income. All these recommendations had also been part of her case plan.

Over the next year, Mother struggled with several of these obligations. While she continued to have unsupervised visitation with the child, she was often living with friends, or in a shelter, and ultimately living in a tent with her boyfriend in a friend's backyard. In October 2024, the family court ruled that the tent was an inappropriate location for visitation. Mother then completed her visitation in

various public places. While she completed the substance abuse evaluation and was not found to require services, her counseling and parenting classes were still not completed. She had not worked for more than a few days over the past three years. Although she had applied for disability in March 2025, she had not yet received a response.

In February 2025, the Cabinet changed the goal to adoption and filed a petition to terminate Mother's rights as the child had been in the care of the Cabinet since August 2023. The trial was held on June 24, 2025. Mother testified, as well as the child's therapist and the Cabinet social worker. The maternal grandmother was called on rebuttal by the Cabinet. On July 26, 2025, the family court issued its findings, conclusions, and judgment terminating Mother's parental rights. This appeal followed. Counsel for Mother filed this appeal, submitting a brief pursuant to *A.C. v. Cabinet for Health and Family Services*, 362 S.W.3d 361 (Ky. App. 2012) ("*Anders*[1] brief"), and moved to withdraw as Mother's counsel. Counsel informed Mother of her right to submit an additional brief, *pro se*, and Mother declined to do so. By separate order, this Court has granted counsel's motion to withdraw.

---

[1] *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

## ANALYSIS

On appeal, our review is limited to a clearly erroneous standard, which focuses on whether the family court's order of termination was based on clear and convincing evidence. Kentucky Rule of Civil Procedure ("CR") 52.01. "Pursuant to this standard, an appellate court is obligated to give a great deal of deference to the family court's findings and should not interfere with those findings unless the record is devoid of substantial evidence to support them." *Commonwealth, Cabinet for Health & Fam. Servs. v. T.N.H.*, 302 S.W.3d 658, 663 (Ky. 2010) (citing *K.R.L. v. P.A.C.*, 210 S.W.3d 183, 187 (Ky. App. 2006)); *see also Cabinet for Health & Fam. Servs. v. K.H.*, 423 S.W.3d 204, 211 (Ky. 2014). Where, as here, counsel files an *Anders* brief, this Court independently reviews the record to ensure "the appeal is, in fact, void of nonfrivolous grounds for reversal." *C.J. v. M.S.*, 572 S.W.3d 492, 494 (Ky. App. 2019) (citing *A.C.*, 362 S.W.3d at 372). Again, however, we defer to the family court unless the record is devoid of substantial evidence to support the family court's findings. *K.H.*, 423 S.W.3d at 211 (quoting *T.N.H.*, 302 S.W.3d at 663). "If the trial court's factual findings are not clearly erroneous and the legal conclusions are correct, we are limited to determining whether the trial court abused its discretion in applying the law to the facts." *Cabinet for Health & Fam. Servs. v. H.L.O.*, 621 S.W.3d 452, 462 (Ky. 2021) (citation omitted).

Here, the family court considered the evidence presented for over three hours and issued detailed findings based upon the evidence presented. Kentucky Revised Statute ("KRS") 625.090 governs involuntary termination of parental rights upon the Cabinet's filing of a petition. KRS 625.090(1)(a)1. requires a finding that "the child has been adjudged to be an abused or neglected child, as defined in KRS 600.020(1), by a court of competent jurisdiction[,]" while KRS 625.090(1)(a)2. permits the court to make a finding that the child is abused or neglected in the termination proceeding itself. A finding under either section must be supported by clear and convincing evidence. KRS 625.090(1). A review of the certified juvenile court record reveals Mother stipulated to a finding of abuse or neglect on February 28, 2024, which satisfies this first prong of the statute.

Under the second prong, KRS 625.090(1)(c), termination of parental rights must be in the child's best interest. To determine the child's best interest, the family court must consider the six factors outlined in KRS 625.090(3). *K.H.*, 423 S.W.3d at 212. Here, the family court's 18-page findings of fact and conclusions of law specifically addressed each factor.

The court noted that, pursuant to KRS 625.090(1)(a)2., the Cabinet had presented clear and convincing evidence through the testimony of the case worker that the child had been abused or neglected as a result of not having her material, emotional, and healthcare needs met by Mother. The court noted

-6-

Mother's failure to comply with remedial orders and the treatment plan so that the child could be safely returned to parental custody, and noted the failure or inability of Mother to do what was necessary to support the child.

Regarding the third factor, the court noted the Cabinet's reasonable efforts to reunite the child with Mother. KRS 625.090(3)(c). The Cabinet had made appropriate referrals to services, and the case worker testified that under the circumstances of this case, she was unaware of any other services that the Cabinet could provide to allow for the safe reunification of Mother with the child considering the age of the child.

The fourth factor concerns the efforts and adjustments the parent has made in her circumstances to make it in the best interest of the child to return to the parent. Here, the family court noted that Mother had not been fully compliant with the court's order from the prior DNA action. Mother had failed to complete protective parenting and did not engage in any counseling until a year after it was ordered. Mother had failed for two years to improve her housing situation, remaining in a tent as of the day of the trial. The evidence at trial indicated she had been provided multiple resources for housing from the Cabinet. Additionally, the court noted that Mother's assessment, when ultimately obtained, did not present any mental or intellectual barriers to her obtaining employment or housing. It appeared from the testimony of Mother that she would be capable of working.

Yet, Mother had not been employed for nearly two years and testified that it was her plan to live with her boyfriend, who was also currently unemployed, and the child, and rely on the child's death benefit (from the death of her father) for income. While she testified that she had some disabilities, she had been denied disability benefits in 2018 and had not applied again until shortly before the trial in early 2025.

The family court noted that Mother's testimony as to her ability to meet her child's future needs was lacking in credibility. Mother's failure to timely seek dental, vision, and medical care for the child was of concern for the family court, and the court noted that Mother had no reasonable excuses for the state of the child's educational or medical conditions at the time of removal.

The fifth factor of KRS 625.090(3) required the court to consider the child's physical, mental, and emotional needs while in the Cabinet's care and custody. KRS 625.090(3)(e). The case worker testified that she had visited with the child on a monthly basis in the foster home, and that the child was doing much better since removal from parental custody. The child was attached to the foster mother, who would adopt the child in the event parental rights were terminated. She further testified that the child was educationally behind due to the excessive absences and had to repeat third grade. The child had not missed any school since being placed into the custody of the Cabinet and had shown great improvements in

reading, writing, and math. The caseworker testified that the child's 14 rotten teeth were immediately treated upon removal from Mother's custody.

Child's therapist testified that the child has ongoing special needs for parenting and supervision, and she expressed concerns with the child's recent regressions, including picking at her skin, falling away from her dental hygiene routine, and exhibiting defiance. The therapist attributed the regression to the child receiving mixed messages about return during her recent unsupervised visitation with Mother. Finally, the therapist testified to concerns with the child's needs being met by Mother, given that Mother remained homeless, unemployed, and unable to provide the child with a stable and safe living environment.

The sixth and final factor a court must consider is the parent's "payment or . . . failure to pay a reasonable portion of substitute physical care and maintenance if financially able to do so." KRS 625.090(3)(f). Mother has not paid any substitute financial assistance since the child has been in state custody.

Ultimately, the record reveals, as often occurs in these difficult cases, that Mother was recently making some strides toward obtaining housing and disability income. She was exercising visitation with the child and undergoing counseling, but these efforts were largely made only after the child had been in the Cabinet's care and custody for approximately two years and after the petition for termination of parental rights had been filed. She still had no income, no stable

housing, and was still incapable of providing the child with "essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being[.]" KRS 625.090(2)(g). Mother's desire to have more time to complete these steps had to be considered against the child's right to safety and permanency within a reasonable period of time. *Cabinet for Families & Children v. G.C.W.*, 139 S.W.3d 172, 177 (Ky. App. 2004).

Having reviewed the record and the applicable statutes, the family court's termination is supported by clear and convincing evidence. The statutory prerequisites were all proven, and the findings and conclusions were all based upon the evidence. The family court did not abuse its discretion in applying the law to these facts. Accordingly, the judgment of the Jefferson Family Court is AFFIRMED.

ALL CONCUR.

BRIEF FOR APPELLANT:

Pamela M. Workhoven
Louisville, Kentucky

BRIEF FOR APPELLEE
CABINET FOR HEALTH AND
FAMILY SERVICES:

Leslie M. Laupp
Covington, Kentucky